IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

_____

**SHARON HAMILTON, Individually, and as**
**Administrator of the Estate of STEVEN LUCK,**

    **Plaintiff,**

vs.                                                    **Case No. _____**
                                                         **JURY DEMAND**

**KIA CORPORATION,**
**KIA AMERICA , INC.,**
**HYUNDAI MOTOR COMPANY,**
**HYUNDAI MOBIS CO. LTD., MOBIS**
**PARTS AMERICA, LLC, and**
**HYUNDAI-KIA AMERICA TECHNICAL CENTER, INC.,**
    **Defendants.**

_____

## COMPLAINT FOR DAMAGES
_____

The Plaintiff, SHARON HAMILITON, Individually, and as the Administrator of the Estate of Steven Luck, hereby files this Complaint for damages pursuant to Tenn. Code Ann. § 20-5-113, and the laws of the State of Tennessee and state causes of action against Defendant KIA CORPORATION, KIA AMERICA INC., HYUNDAI MOTOR COMPANY, HYUNDAI MOBIS CO. LTD., MOBIS PARTS AMERICA, LLC, and HYUNDAI-KIA AMERICA TECHNICAL CENTER, INC. as follows:

### **PARTIES**

1.    Plaintiff Sharon Hamilton is an adult resident citizen of Hamilton County, Tennessee.

2. Defendant Kia Corporation (hereinafter "KC") is a foreign corporation with its principal place of business located in Seoul, South Korea. At all times material hereto, KC was and is a foreign Korean corporation doing business in Tennessee, and in this district. KC may be served by registered mail with Summons and Complaint pursuant to Article 10(a) to The Convention on The Service Abroad Service of Judicial or Extrajudicial Documents in Civil or Commercial Matters, commonly referred to as The Hague Convention at: 231, Yangjae-dong, Seocho-gu, Seoul, 137-938, Republic of Korea, and when said agent is served with a copy of the Summons and Complaint, KC will be subject to the jurisdiction and venue of this Court.

3. Defendant Kia America, Inc. (hereinafter "KA") is a California corporation headquartered in Irvine, California with its principal place of business located at 111 Peters Canyon Road, Irvine, California 92606. It may be served through its registered agent for service of process, CT Corporation System, located at 300 Montvue Road, Knoxville, TN 37919-5546. KA is a duly qualified and licensed corporation domiciled in another state, which is authorized to and regularly conducts business within the state of Tennessee and derives substantial economic profits from Tennessee.

4. Defendant Hyundai Motor Company (hereinafter "HMC") is a foreign corporation with its principal place of business located in Seoul, South Korea. At all times material hereto, HMC was and is a foreign Korean corporation doing business in Tennessee, and in this district. HMC may be served by registered mail with Summons and Complaint pursuant to Article 10(a) to The Convention on The Service Abroad Service of Judicial or Extrajudicial Documents in Civil or Commercial Matters, commonly referred to as The Hague Convention at: 12, Heolleung-Ro, Seocho-gu, Seoul, 137-938, Republic of Korea, and when said agent is served with a copy of the Summons and Complaint, KC will be subject to the jurisdiction and venue of this Court.

5. Defendant Hyundai Mobis Co. Ltd. (hereinafter "HM") is a foreign corporation with its principal place of business located in Seoul, South Korea. At all times material hereto, HM was and is a foreign Korean corporation doing business in Tennessee, and in this district. HM may be served by registered mail with Summons and Complaint pursuant to Article 10(a) to The Convention on The Service Abroad Service of Judicial or Extrajudicial Documents in Civil or Commercial Matters, commonly referred to as The Hague Convention at: 203, Teheran-ro, Gangnam-gu, Seoul, 135-977, Republic of Korea, and when said agent is served with a copy of the Summons and Complaint, KC will be subject to the jurisdiction and venue of this Court.

6. Defendant Mobis Parts America, LLC (hereinafter "Mobis Parts") is a Delaware limited liability company headquartered in Fountain Valley, California with its principal place of business located at 10550 Talbert, Avenue, 4th Floor, Fountain Valley, California 92708. It may be served through its registered agent for service of process, Corporate Creations Network, Inc., located at 205 Powell Place, Brentwood, Tennessee 37027-7522. Mobis Parts is a wholly owned subsidiary of Hyundai Mobis Co. Ltd. and engages in business activities in furtherance of the interests of Hyundai Mobis Co. Ltd.. Hyundai Mobis Co. Ltd. is the parent company of Mobis Parts America, LLC. Mobis Parts is authorized to and regularly conducts business within the state of Tennessee and derives substantial economic profits from Tennessee.

7. Defendant Hyundai-Kia America Technical Center, Inc. (hereinafter "HATCI") is a Michigan corporation headquartered in Superior Township, Michigan with its principal place of business located at 6800 Geddes Road, Superior Township, Michigan 48198-9670. It may be served through its registered agent for service of process, Mark S. Torigian, Esq., located at 6800 Geddes Road, Superior Township, Michigan 48198-9670. HATCI is a duly qualified and licensed

3

corporation domiciled in another state, which is authorized to and regularly conducts business within the state of Tennessee and derives substantial economic profits from Tennessee.

8. Kia Corporation, Kia America, Inc., Hyundai Motor Company, Hyundai Mobis Co. Ltd., Mobis Parts America, LLC, and Hyundai-Kia America Technical Center, Inc. are hereinafter referred to collectively as the "Kia Defendants."

## FACTS RELEVANT TO JURISDICTION AND VENUE

9. Plaintiff incorporates all paragraphs above as if fully stated herein.

10. The is an action filed under the provision of 28 U.S.C. § 1332 by reason of the diversity of citizenship of the Parties, and the amount in controversy exceeds the minimum requirements for the jurisdiction of this Court.

11. This Court has specific personal jurisdiction over the Kia Defendants because they have purposefully availed themselves of the privilege of conducting activities in Tennessee, and Plaintiff's damages arise out or of relate to those activities.

12. At all times material hereto, the Kia Defendants designed, developed, engineered, manufactured, tested, warranted, distributed, marketed and/or sold automobile vehicles, including but not limited to the 2015 Kia Soul, VIN: KNDJP3A57F7188480 (hereinafter, the "Subject Vehicle" or "Subject Kia").

13. Through its agents and assigns, the Kia Defendants placed such vehicles, including the Subject Vehicle, into the stream of commerce, distributed, marketed, and sold such vehicles for use by members of the general public in the United States, including the state of Tennessee.

14. The Kia Defendants have insured risks in the United States, including the state of Tennessee. The Kia Defendants have sued or been sued in Tennessee federal and state courts on numerous occasions. The Kia Defendants have been involved in litigation in Tennessee on dozens

if not hundreds of occasions where it has not contested personal jurisdiction and where it has consented to be sued. Employees, officers and/or directors of the Kia Defendants have visited, conducted business, and/or worked in Tennessee. There has never been a time in the past 40 years where the Kia Defendants did not sell, distribute, or market its vehicles in Tennessee.

15. The Kia Defendants have a national dealership network that includes many dealerships in the United States, including the state of Tennessee, which market and sell new Kia products, service Kia products, honor Kia warranties, and carry out necessary vehicle recall work which Kia requires.

16. A significant segment of the Kia Defendants' gross income for sales, service, and repair work derives from the activities of their dealership network in the United States, including the state of Tennessee.

17. The Kia Defendants also monitor their vehicles, such as looking at customer complaints or feedback from distributors and dealers, including many in the United States, including the state of Tennessee.

18. The Kia Defendants keep records of how many vehicles ship to each state, including Tennessee.

19. The Kia Defendants maintain multiple offices in the United States, including the state of Tennessee.

20. The Kia Defendants have subsidiaries and business affiliates in the United States, including the state of Tennessee.

21. The Kia Defendants have employees and agents in the United States, including the state of Tennessee.

22. The Kia Defendants keep records of the revenue that they derive from the United States, including the state of Tennessee.

23. Numerous corporate representatives, agents, and/or employees for the Kia Defendants have visited the United States, including the state of Tennessee, for business purposes on occasion.

24. The Kia Defendants have been a party to numerous cases where it has come into federal and state courts in the United States, including the state of Tennessee, to answer claims about the failure of Kia products in Tennessee.

25. The Kia Defendants have been a party seeking relief or review in numerous cases where it has purposefully availed itself of the jurisdiction of the courts of Tennessee by serving as the petitioner, appellant, or removing party in such actions.

26. The Kia Defendants spend untold thousands if not millions of dollars per year marketing their products in the United States, including the state of Tennessee, and to United States residents, including Tennessee residents.

27. The Kia Defendants design, manufacture, test, assemble, sell, distribute, and place Kia products and their component parts into the stream of commerce, such as the subject model vehicle involved in the incident made the basis of this lawsuit. The Kia Defendants have provided thousands upon thousands of the subject model vehicle directly to Kia dealerships in the United States, including the state of Tennessee, and Kia consumers.

28. Advertisement and marketing materials were and are targeted to United States residents, including Tennessee residents, to entice them to purchase Kia products and services, including the subject model vehicle.

6

29. The Kia Defendants have spent millions of dollars advertising and marketing their products in the United States, including the state of Tennessee, and directly to Tennessee residents for years, whether in the form of television advertisements, magazine advertisements, newspaper advertisements, internet advertisements, or other forms of advertising and/or marketing.

30. The Kia Defendants have active websites accessible in the United States, including the state of Tennessee, where Kia engages in the direct sale of Kia products from these websites.

31. Each website has numerous interactive features. Kia's web page is www.kia.com. This website features its logos in prominence at the top of the web page. Kia's copyrighted website home page has active features such as a link which United States consumers, including those in Tennessee, can click to access a page where they can exchange information and directly purchase officially licensed Kia merchandise. Each web page also has a pull down menu tab which allows Tennessee residents to find an authorized dealer nearby for Kia products. Each web page solicits Tennessee consumers to exchange information about their home address and the year, make, and model of their respective Kia vehicle to directly purchase official Kia automotive parts tailored to their specific vehicle, so they can have those parts shipped directly to their home address in Tennessee.

32. The Kia Defendants have a regular plan for the distribution of its new and used products within the United States, including the state of Tennessee, with the goal of achieving commercial benefits from the sale of those products in the United States, including the state of Tennessee.

33. The Kia Defendants place its products into the stream of commerce by targeting United States residents, including Tennessee residents through dozens of approved Kia dealerships in many cities and towns in the United States, including the state of Tennessee.

7

34. The Kia Defendants have contracts with its Kia dealerships in the United States, including the state of Tennessee, where Kia contractually promises to come into courts in Tennessee to defend claims about the failure of Kia products that injure Tennessee residents.

35. The Kia Defendants require that their Tennessee dealerships advertise within Tennessee, and the Kia Defendants share in the cost of these United States advertisements, including Tennessee advertisements, for Kia products.

36. The Kia Defendants jointly participate in the interactive websites of the Kia dealerships located in the United States, including the state of Tennessee. The Kia Defendants certify mechanics who work at the Kia dealerships in the United States, including the state of Tennessee.

37. The Kia Defendants provide certification training for mechanics who work at the Kia dealerships at multiple locations in the United States, including the state of Tennessee.

38. The Kia Defendants oversee aspects of its product warranty process from within the United States, including the state of Tennessee.

39. The Kia Defendants send technical service bulletins regarding work procedures related to the subject vehicle into the United States, including the state of Tennessee.

40. The Kia Defendants send recall notices related to safety defects in the subject vehicle into the United States, including the state of Tennessee.

41. The Kia Defendants direct United States consumers, including Tennessee consumers to approved Kia service centers to have recall work performed on the subject model vehicle initially sold into various states but located in Tennessee.

42. The Kia Defendants gather data about its vehicle performance in the United States, including the state of Tennessee, and use that data in the redesign of their products.

8

43. The Kia Defendants hold patents and trademarks which it demands must be honored in the United States, including the state of Tennessee.

44. The Kia Defendants further manufactures its products and its vehicles to comply with the Federal Motor Vehicle Safety Standards (FMVSS) and it routinely corresponds and works with the National Highway Traffic Safety Administration (NHTSA) on recalls and other issues, including recalls or fixes to problems for vehicles owned and used by United States residents, including Tennessee residents.

45. Maintaining jurisdiction over the Kia Defendants does not work a constitutionally prohibited hardship or a denial of due process.

46. There is little or no burden on the Kia Defendants litigating this case in this Court. In contrast, it would be a tremendous burden and great inefficiency and unnecessary delay imposed on the Plaintiffs to litigate this case in another forum.

47. The Kia Defendants cannot deny personal jurisdiction because Kia placed the subject vehicle into the stream of commerce in the United States, including the state of Tennessee, and under circumstances such that Kia should reasonably anticipate being haled into court in the United States, including the state of Tennessee.

48. The Kia Defendants are in the business of the manufacture of vehicles, including the vehicle which caused the injuries complained of herein. They also derive substantial profit from the sale of vehicles and products in the United States, including the state of Tennessee. The Kia Defendants in no way, shape, or form ever restricted the vehicle which caused these injuries from being distributed, sold, or used in the United States, including the state of Tennessee. The Kia Defendants have purposefully availed themselves of the privilege and benefits of conducting activities within the United States, including the state of Tennessee.

9

49. Upon information and belief, Plaintiff contends that at all times mentioned herein, each and every Defendant was acting as an agent and/or employee of each of the other Defendants, and at all times mentioned were acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other Defendants. Therefore, the foregoing averments regarding the Kia Defendants' contacts with the United States, including the state of Tennessee, would apply with equal effect to the designers and manufacturers of the components. In addition, each of the acts and/or omissions of each Defendant alleged herein were made known to and ratified by each of the other Defendants.

50. This Complaint is filed within the applicable statute of limitations and statute of repose.

51. Every cause of action alleged against the Kia Defendants arises out of a motor vehicle crash which occurred in Hamilton County, Tennessee on December 5, 2022.

52. The Court has subject matter jurisdiction as well as specific and general personal jurisdiction over the parties.

53. Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(b)(2), (c)(2), (c)(3), and (d).

**FACTS**

54. Plaintiff incorporates all paragraphs above as if fully stated herein.

55. On or about December 5, 2022, Steven Luck (hereinafter referred to as "Luck" or "Decedent"), Deceased, was the properly seat belted driver of a 2015 Kia Soul, VIN: KNDJP3A57F7188480, ("Subject Vehicle") and had left his grandmother's house to drive to work with his girlfriend in the passenger seat at approximately 6:55 a.m.. He obeyed all traffic laws and followed the speed limit accordingly.

10

56. While driving north on Hale Road, Luck seemed to lose consciousness with his hands on the steering wheel and his foot still on the pedal going at a steady rate of speed.

57. At approximately 7:04 a.m., the Subject Vehicle veered into the oncoming lane of traffic, traveled off the roadway, and collided into a tree.

58. During the collision, Luck's seatbelt pretensioner failed to fire, causing the top half of his body to be seemingly unrestrained.

59. Due to this defect, the lower half of his body remained restrained in his seat while the upper half of his body was able to freely spool out his seatbelt from the B pillar of the vehicle. As his torso did not remain properly restrained to his seat, the force of his body moving toward the front of the vehicle was so great that his lower "lap belt" essentiality eviscerated him. As his lower belt synched at the buckle, the lap belt dug into his abdomen so deeply that it almost completely bisected his liver.

60. After the collision, Steven Luck unbuckled himself and exited the Subject Vehicle.

61. He almost immediately laid down on the ground in excruciating pain.

62. An ambulance arrived at the scene and transported Luck to Erlanger Health System.

63. When Luck arrived at the hospital, he was rushed to the operating room where he died from his injuries, at approximately 9:01 a.m. on December 5, 2022.

64. As a direct and proximate result of the conduct, acts, and omissions of the Kia Defendants, Steven Luck sustained severe injuries in the collision that lead to his death, and Luck's natural mother, Plaintiff Sharon Hamilton, lost her son as a result of this collision. Plaintiff Sharon Hamilton has suffered substantial damages for which recovery is provided pursuant to the wrongful death statute, Tenn. Code Ann. § 20-5-113 and common law.

11

65. Plaintiffs allege that the Subject Vehicle was unreasonably dangerous in that the occupant restraint system and/or driver's airbag system of the Subject Vehicle were defective. The Subject Vehicle was not reasonably crashworthy.

## **COUNT I - STRICT LIABILITY ACTION AS TO THE KIA DEFENDANTS**

66. Plaintiff incorporates all paragraphs above as if fully stated herein.

67. At all relevant times, the Kia Defendants were actively engaged in the business of designing, developing, engineering, manufacturing, assembling, testing, warranting, distributing, marketing, advertising, servicing, promoting and/or selling the 2015 Kia Soul, including the Subject Vehicle.

68. The Kia Defendants had a duty to design, develop, engineer, manufacture, assemble, test, warrant, distribute, market, advertise, service, promote and/or sell the 2015 Kia Soul, including the Subject Vehicle, so that it was neither defective nor unreasonably dangerous for its intended use.

69. The Kia Defendants designed, developed, engineered, manufactured, assembled, tested, warranted, distributed, marketed, advertised, serviced, promoted and/or sold and placed on the market and into the stream of commerce the Subject Vehicle in a defective condition rendering it unreasonably dangerous knowing that the Subject Vehicle would reach users and consumers without substantial change in the condition in which it was sold, and that, at the time the Subject Vehicle left the Kia Defendants' control, it was unreasonably dangerous, defective and unsafe for its intended use.

70. The Kia Defendants placed the Subject Vehicle on the market and into the stream of commerce with the knowledge that it would be used without inspection for defects. At the time the Subject Vehicle left the control of the Kia Defendants, they knew or in light of reasonably

12

available knowledge or in the exercise of reasonable care should have known, about the dangers that caused the injuries to Mr. Luck. The Kia Defendants knew or should have known that the ultimate users, operators and/or consumers of the Subject Vehicle would not inspect the Subject Vehicle for defects and dangerous conditions, and the detection of such defects would be beyond the capabilities of the reasonable ordinary user, operator and consumer of the Subject Vehicle, including Mr. Luck and Ms. Hamilton.

71. The Subject Vehicle was not materially or substantially altered, changed, modified or damaged prior to the accident.

72. On December 5, 2022, Mr. Luck was using the Subject Vehicle for the purpose for which it was reasonably and foreseeably intended and was involved in a collision which was likewise reasonably foreseeable.

73. The Subject Vehicle was defective and unreasonably dangerous because it was not reasonably crashworthy.

74. The design, manufacture and/or assembly of the Subject Vehicle was performed with design standards and performance objectives that were intended to meet the minimum and/or inadequate governmental regulations instead of to perform safely in foreseeable accident sequences.

75. The occupant restraint system of the Subject Vehicle, including but not limited to the seat belt system, was defective and unreasonably dangerous because it failed to restrain and/or protect Mr. Luck and allowed injuries during the foreseeable accident sequence.

76. The Subject Vehicle was defective and unreasonably dangerous because the Kia Defendants failed to design the Subject Vehicle's occupant restraint system, including but not

13

limited to the seat belt system, so as to restrain, protect, and minimize the probability of injury to Mr. Luck in a foreseeable accident sequence.

77. The driver's airbag system of the Subject Vehicle, including but not limited to the timing of deployment, was defective and unreasonably dangerous because it failed to protect Mr. Luck from hitting the steering wheel and/or windshield in a foreseeable accident sequence.

78. The Subject Vehicle was defective and unreasonably dangerous because the Kia Defendants failed to design the Subject Vehicle's driver's airbag system, including but not limited to the timing of deployment, so as to keep Mr. Luck in place and protected from movement to the steering wheel and/or windshield and probability of injury to Mr. Luck in a foreseeable accident sequence.

79. The Kia Defendants knowingly failed to adequately test the 2015 Kia Soul, including the Subject Vehicle, before, during and after the design, production and sale of the Subject Vehicle to the public and/or knowingly placed the dangerously designed 2015 Kia Soul, including the Subject Vehicle, onto the market and into the stream of commerce.

80. The Kia Defendants rendered the Subject Vehicle unreasonably dangerous by failing to adequately warn users and/or consumers about the hazards of driving the Subject Vehicle with a defective and/or inadequately designed and unreasonably dangerous occupant restraint system and/or driver's airbag system.

81. At the time the Subject Vehicle left the control of the Kia Defendants, they knew or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the dangers that caused the injuries and death to Mr. Luck.

14

82. The Subject Vehicle failed to function as expected in this collision and there existed feasible design alternatives that would have to a reasonable probability prevented the injuries and death to Mr. Luck.

83. The defective conditions set forth in the above paragraphs rendered the Subject Vehicle unreasonably dangerous to the user, Mr. Luck.

84. As a direct and proximate result of the conduct, acts and/or omissions of the Kia Defendants, Mr. Luck suffered extreme injuries and death. Additional and substantial damages and injuries have been suffered for which recovery is provided pursuant to the doctrine of strict liability and/or Tennessee law. Plaintiff Sharon Hamilton has suffered substantial damages for which recovery is provided pursuant to the wrongful death statute, Tenn. Code Ann. § 20-5-113 and common law.

85. The conduct of the Kia Defendants was so willful, wanton, malicious, reckless, and in such disregard for the consequences as to reveal a conscious indifference to the clear risk of death or serious bodily injury and merits the imposition of punitive damages.

### COUNT II - FAILURE TO WARN AS TO THE KIA DEFENDANTS

86. Plaintiff incorporates all paragraphs above as if fully stated herein.

87. As more fully described above, the Kia Defendants designed and/or manufactured a defective and unreasonably dangerous Subject Vehicle.

88. The Subject Vehicle was further rendered unreasonably dangerous because the Kia Defendants failed to provide potential customers, operators and/or occupants of the Subject Vehicle with an adequate warning of the hazards associated with operating and/or using the Subject Vehicle in the defective and unreasonably dangerous conditions set forth above at the time the Subject Vehicle left the Kia Defendants' control.

89. At the time the Subject Vehicle left the control of the Kia Defendants, it possessed characteristics as more fully described above which the Kia Defendants knew, or in light of reasonably available knowledge should have known, could cause or probably would cause severe injury and/or death to users and consumers of the Subject Vehicle such as Mr. Luck.

90. The Kia Defendants failed to provide an adequate warning or instruction that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the Subject Vehicle taking into account the characteristics of, and the ordinary knowledge common to an ordinary consumer who purchases the product and/or user such as Mr. Luck.

91. As a direct and proximate result of the conduct, acts and/or omissions of the Kia Defendants, Mr. Luck suffered extreme injuries and death. Additional and substantial damages and injuries have been suffered for which recovery is provided pursuant to Tennessee law. Plaintiff Sharon Hamilton has suffered substantial damages for which recovery is provided pursuant to the wrongful death statute, Tenn. Code Ann. § 20-5-113 and common law.

92. The conduct of the Kia Defendants was so willful, wanton, malicious, reckless, and in such disregard for the consequences as to reveal a conscious indifference to the clear risk of death or serious bodily injury and merits the imposition of punitive damages.

## COUNT III – NEGLIGENCE OF THE KIA DEFENDANTS

93. Plaintiff incorporates all paragraphs above as if fully stated herein.

94. The Kia Defendants were negligent in designing, manufacturing, assembling, inspecting, testing, labeling, marketing, disturbing, monitoring, promoting, and/or selling the Subject Vehicle.

16

95. The Kia Defendants knew or should have known that safer alternative designs were available to the Kia Defendants which would have prevented Luck's injuries and death had they been utilized.

96. On or about December 5, 2022, the Subject Vehicle was being used for the purpose for which it was reasonably and foreseeably intended, and was involved in a motor vehicle incident which was likely reasonably foreseeable.

97. The Subject Vehicle was not materially altered, modified, or damaged by Mr. Luck prior to the subject incident.

98. The Kia Defendants breached their duty to Mr. Luck by placing the Subject Vehicle in the stream of commerce in an unreasonably dangerous, defective, and unsafe condition for its intended use, as explained above.

99. The Kia Defendants' negligent acts and/or omissions as stated above were a proximate cause of Luck's severe injuries and death. Defendants are therefore liable to Mr. Luck and Ms. Hamilton for injuries caused by Defendants' negligence.

100. The conduct of the Kia Defendants was so willful, wanton, malicious, reckless, and in such disregard for the consequences as to reveal a conscious indifference to the clear risk of death or serious bodily injury and merits the imposition of punitive damages.

## DAMAGES

101. Plaintiff incorporates all paragraphs above as if fully stated herein.

102. As a direct and proximate result of the Kia Defendants' conduct, acts and/or omissions, Mr. Luck suffered severe injuries which led to his death. Plaintiff has additionally suffered substantial damages for which recovery is provided pursuant to the wrongful death statute, Tenn. Code Ann. § 20-5-113, including but not limited to filial loss of consortium; loss of

17

enjoyment of life; loss of filial love and attention of Mr. Luck; loss of future earning capacity; and Luck's pre-death pain and suffering. Additionally, the Plaintiff has incurred funeral and burial expenses, and Plaintiff therefore, as required by law, seeks a judgment against Defendants in an amount to be determined by the jury, but not to exceed ten million dollars ($10,000,000.00).

103. In addition, the acts and omissions as set forth above against the Kia Defendants demonstrate that they acted with actual malice, gross negligence that evinces a willful, wanton or reckless disregard for the safety of others or that each committed actual fraud and thus warrants the imposition of punitive damages in this case in an amount to be set by a jury necessary to punish or deter the Kia Defendants and others and considering all reasonable factors under applicable Tennessee law.

104. Sharon Hamilton, individually, brings claims of loss of consortium of a parent, separate and apart from her claims as the Administrator of Mr. Luck's Estate. Ms. Hamilton seeks recovery for her own loss of filial consortium.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief against Defendants as to all counts as follows:

1. That proper service be issued and served upon Defendants;

2. That a trial by jury be had on all issues;

3. That Plaintiff recovers a judgment for compensatory damages against Defendants;

4. That Plaintiff recovers a judgment for punitive damages against the Kia Defendants;

5. That Plaintiff recover reasonable costs and expenses; and

6. That Plaintiff has and receives any other further relief to which she may show herself to be justly entitled.

18

Respectfully submitted,

By: ____/s/ Daniel V. Parish_____
Daniel V. Parish (TN Bar #027452)
WOLFF ARDIS, P.C.
Email: dparish@wolffardis.com
5810 Shelby Oaks Drive
Memphis, TN 38134
Telephone (901) 763-3336
Facsimile (901) 763-3376

19